UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
BOSTON, MASSACHUSETTS

|  |  |  |
|---|---|---|
|  | )Civil Action: 05-10651-DPW |  |
| JOSE BARROSO; ANNA ANGELICA M. COSTA; and RAISSA M. COSTA | ) ) ) ) ) |  |
| Plaintiffs | ) ) |  |
| v. | ) ) |  |
| MICHAEL CHERTOFF Secretary, U.S. Department of Homeland Security; EDUARDO AGUIRRE, JR. Director, U.S. Citizenship And Immigration Services, DENIS RIORDAN, Boston District Director, U.S. Citizenship and Immigration Services Defendants | ) ) ) ) ) ) ) ) ) ) ) |  |

**PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS OR
IN THE ALTERNATIVE FOR SUMMARY JUDGMENT**

The Plaintiffs Jose Barroso, Anna Angelica M. Costa and Raissa M. Costa (collectively the "Plaintiffs"), by and through their undersigned attorney, hereby submit their opposition to the Defendants, Michael Chertoff, Secretary, U.S. Department of Homeland Security; Eduardo Aguirre, Jr., Director, U.S.Citizenship and Immigration Services ("USCIS"), Denis Riordan, Boston District Director, USCIS (collectively, the "Defendants" or the "Government") Motion to Dismiss or in the Alternative for

- 1 -

Summary Judgment ("Defendants' Motion"). In support thereof, the Plaintiffs state as follows.

## FACTS AND PROCEEDINGS

The Plaintiffs brought this suit to compel USCIS to adjudicate their permanent resident application (I-485) (the Applications"), which they filed on June 6, 2002.[1] Complaint, ¶11. The Plaintiffs eligibility to adjust status, i.e., obtain a "green card", derived from an I-140 Immigrant Petition for Alien Worker that was filed by Oysters Too, a restaurant located in Falmouth, Massachusetts on behalf of Mr. Barroso (the "I-140 Petition"). USCIS approved the I-140 Petition on April 24, 2002.

USCIS interviewed the Plaintiffs regarding their Applications on October 21, 2004[2]. The interviewing officer made no decision on the Applications because she needed to verify that the alien did not have any other immigration applications pending. Complaint, ¶¶ 15-16. Since then, the Plaintiffs sent USCIS repeated oral and written status inquiries, but USCIS failed to respond in any manner whatsoever. Complaint,¶12-13. In their last attempt to resolve the matter, the Plaintiffs had their counsel send a letter to USCIS requesting that USCIS adjudicate their Applications or they would commence a mandamus action on or about March 25, 2005[3]. They received no response. Accordingly, the Plaintiffs had no other alternative but to bring the present action whereby they seek an order from the Court compelling the Defendants to perform their duty and adjudicate the Applications

.

---

[1] 8 U.S.C. §1255 allows an alien to seek adjustment of immigration status to that of a legal permanent resident ("LPR" ) of the United States. **Add section about how derivatives are eligible.**
[2] Pursuant to 8 C.F.R. §245.6 "each applicant for adjustment of status under §1255 shall be interviewed by an immigration officer".
[3] See letter from Plaintiffs' counsel to USCIS dated February 28, 2005

## **GOVERNMENT'S ARGUMENT**

In moving to dismiss the Plaintiffs' claim, the Government contends that the adjudication of an I-485 Application is a discretionary act, and, therefore, mandamus jurisdiction is not proper.  Its argument, as detailed below, fails to recognize the distinction between the duty a government official has under §1255 to adjudicate an adjustment of status application and the discretion a government official has in adjudicating the adjustment application in favor of an alien.

The Defendant also claims that the Administrative Procedures Act ("APA") does not vest the Court with jurisdiction because the prolonged processing delays involved in the case are reasonable.  As detailed below, the record in the present case belies this contention.  By  the Defendants own admission (see Declaration of Denis Riordan attached to Defendants' Motion "Riordan Declaration"), USCIS "investigation" commence on March 10, 2005 – two week prior to the Plaintiffs' litigation deadline. Moreover, Riordan's Declaration makes it clear that USCIS only attempt to verify the prior employment was over six months ago when it took steps that are vaguely described as "through diplomatic channels".  Id.  Since this one affirmative act, it appears that USCIS has done nothing with its "investigation".

In its last attempt to dismiss the Complaint, the Government contends that even if the Court exercises its jurisdiction in the matter, it is entitled to summary judgment because the significant processing delays do not constitute a violation of the APA as a matter of law.  As detailed below, the underlying record in the case does not support the Government's argument.

ARGUMENT

I. THIS COURT HAS JURISDICTION TO HEAR PLAINTIFFS' CLAIMS.

The Plaintiff's Compliant alleges that the Court has subject matter jurisdiction to hear his claims under the Mandamus Statute, 28 U.S.C. § 1361, 28 U.S.C. §§1331 and 5 U.S.C. 551 *et seq.* (APA).  Each of these statutes confer jurisdiction upon this court.

Federal courts are courts of limited jurisdiction, deriving their authority from both constitutional and legislative sources.  28 U.S.C. §1331.  It is exclusively the power of Congress to restrict the jurisdiction of federal courts to adjudicate certain types of cases. Keene Corp. v. U.S., 508 U.S. 200, 207, 113 S.Ct. 2035(1993).  Federal courts will not infer congressional intent to restrict their jurisdiction.  Block Community Nutrition Institute, 467 U.S. 340, 104 S.Ct. 2450 (1984).  The presumption in favor of judicial review may only be rebutted by a showing of clear and convincing evidence that Congress intended to preclude judicial review.  Board of Governors of the Federal Reserve System v. McCorp Financial Inc., 502 U.S. 32, 44, 112 S.Ct. 459 (1991). As detailed below, applying these judicial tenets to the case at bar reveals that the court has subject matter jurisdiction over the present matter.

**A. Mandamus Jurisdiction is Proper in the Present Case**

United States District Courts have mandamus jurisdiction to "compel an officer or employee of the United States ... to perform a duty owed to the Plaintiff.  28 U.S.C. §1361.  Mandamus jurisdiction is properly invoked when:  (1) the plaintiff has a clear right to the relief sought; (2) the defendant has a clear duty to perform; and (3) no other adequate remedy is available."  Heckler v. Ringer, 466 U.S. 602, 104 S.Ct. 2013 (1984). As demonstrated below, the Plaintiff has adequately pled all three of these requirements.

*1. There is a Clear Right to the Relief Sought*

In the present case, the Plaintiffs seek mandamus to compel USCIS to adjudicate the application to adjust their status to that of a permanent resident (I-485)(the "Applications") as provided for in 8 U.S.C. §1255.

In their Motion, the Government states that adjustment of status is a discretionary act, and, therefore, mandamus jurisdiction is improper.  Its argument, however, fails to recognize that the duty to adjudicate an application is separate and distinct from the discretionary act of ultimately granting status.

Although the Plaintiffs were unable to locate any decisions from the First Circuit, other Federal Courts that have dealt with the issue have consistently held that, for mandamus jurisdictional purposes, 8 U.S.C. §1255 entitles an applicant for permanent residence a right to an adjudication. Paunescu v. INS, 76 F.Supp.2d 896 (N.D.Ill. 1999)(holding that court had mandamus jurisdiction when USCIS failed to adjudicate an I-485 Application); Agbemaple v. INS 1998 WL 292441(N.D.Ill. 1998)(holding mandamus jurisdiction proper when the plaintiff sought to compel an adjudication of an I-485 application after a year had transpired since the USCIS interviewed him on the application)(N.D. Ill.1998); Jaffer v. Reno, 2000 WL 866522 (C.D.Cal.2000)(recognizing that § 1255 provides for a right to an adjudication of I-485 Application); *accord* Setharatsomphou v. Reno, 1999 WL 755292 (N.D.Ill. Sept. 27, 1999)(stating that a petitioner has a right to adjudication of his I-485 application); Yu v. Brown, 36 F.Supp.2d 922 (D.N.M. 1999)(holding that the federal regulation promulgated under §1255 makes it clear that USCIS has a non-discretionary duty to act on I-485 applications); Nadlar v. INS 737 F.Supp. 658, 659 (D.D.C. 1989)(awarding attorneys fees under the Equal Access

for Justice Act after the plaintiff prevailed in a mandamus action that sought to compel the USCIS to adjudicate his I-485 Application).

Based on the foregoing, the Plaintiffs have satisfied the first requirement for mandamus.

### 2. *The Government Has a Clearly Defined Duty to Process the Application in a Reasonable Time.*

Although §1255 does not specify a time by which USCIS must issue a decision, it is well-established that the government has a duty to adjudicate an application filed under §1255 within a reasonable time.  Panunascu, *supra*, 76 F.Supp.2d at 901("government has a non-discretionary duty to issue a decision on Plaintiffs' application within a reasonable time") Agbemaple v. I.N.S., 1998 WL 2924411 (holding that adjudication of applications under §1255 must occur within a reasonable time) Jaffer v. Reno, 2000 WL 866522 (C.D.Cal.2000)(noting the same) Setharatsomphou v. Reno, 1999 WL 755292 (N.D.Ill.Sept. 27, 1999; Yu v. Brown, 36 F.Supp. 2d 922 (D.N.M. 1999)(establishing that USCIS ad a non-discretionary duty to process special immigrant juvenile applications, even though USCIS had discretion in the ultimate decision whether to grant permanent status).

For instance, in Agbemaple, supra, 1998 WL 292441, the court found mandamus jurisdiction in circumstances similar to the present case.  There, the plaintiff brought a mandamus action to compel USCIS to adjudicate his I-485 Application.  The application had been filed two (2) years prior to the filing of the complaint and was still pending a year after USCIS conducted the interview.  In finding that mandamus jurisdiction was proper the court noted that "a contrary position, would permit the USCIS to delay

- 6 -

indefinitely. Congress could not have intended to authorize potentially interminable delays" 1998 WL 292441 *2.

Similarly, in Yu v. Brown[4], mandamus jurisdiction was found when the plaintiff sought to compel the USCIS by mandamus to adjudicate her application for adjustment, which had been pending for a year. The court determined mandamus was an appropriate remedy because the Government had a clearly defined duty to process the I-485 application in a reasonable time.

The logic underlying the above-cited cases must be extended to the present case. The Plaintiffs were interviewed on this case in October 2004– almost one year ago. USCIS approved his I-140 Petition, which was based on his prior work experience in April 2002. In his declaration submitted in support of Defendant's Motion, Denis Riordan, Boston District Director of USCIS claims that an issue arose as to Mr. Barosso's work experience sometime after April 2002. By its own admission, however, USCIS acknowledges that it was only in March 2005— after litigation was imminent - -that USCIS made any effort to verify Mr. Barroso's prior work experience. Riordan Declaration, ¶1. Moreover, their efforts appear to be limited to one inquiry, which is vaguely described through "diplomatic channels". This prolonged delay and languid inquiry is inexcusable and must be placed under judicial review. If the Court decides otherwise, it would essentially make USCIS unaccountable for its actions and grant it a license to avoid its responsibilities under 8 U.S.C. §1255.

### 3. *There is No Adequate Remedy Available*

The Plaintiffs have exhausted all of their administrative remedies in that there is no administrative remedy for the Government's inaction. This is not a case where there

---

[4] supra, 36 F.Supp.2d 922.

was a denial of his application where he would have had to follow administrative steps to appeal said decision. The Government has simply failed to take action and has ignored repeated requests to adjudicate the matter. In this situation, "mandamus is the only available remedy that is sufficiently flexible to afford the Court the opportunity to rectify government neglect and dilatoriness." Harriott v. Ashcroft, 277 Supp.2d 538, 545 (E.D.Pa. 2003)(exercising mandamus jurisdiction when plaintiff sought adjudication of an application for derivative citizenship).

### *4. Government's Supporting Cases are Clearly Distinguishable*

In support of its argument, the Government cites to Checkman v. McElroy, 313 F.Supp.2d 270 (S.D.N.Y. 2004); Sadowski v. INS, 107 F.Supp.2d 451 (S.D.N.Y. 2000); Wan Shih Hsieh v. Kiley, 569 F.2d 1179 (C.A.N.Y. 1978). Its reliance on these cases is misplaced. The cases arise from different sections of the INA, which, arguably, grant USCIS discretion to perform the act specified in the respective sections.[5] In the present case, long-standing case law holds that the Government has a non-discretionary duty to adjudicate applications under §1255. *See supra* at pp 6-7.

---

[5] In Checkman v. McElroy, the Plaintiff sought a writ of mandamus to compel INS to place him in removal proceedings. The court ruled that IRIRIA §309(c)(3), which is the governing statute regarding removal proceedings, conferred complete discretion on the Attorney General regarding whether to place a person in removal proceedings. Id. At 274. Accordingly, the Court ruled that mandamus jurisdiction was improper because the statute involved a discretionary act.
   In Sadowski v. INS, 107 F.Supp.2d 451 (S.D.N.Y. 2000), INS had denied the Plaintiff's I-485 application. The Plaintiff then sought a writ of mandamus to protect him from INS purported failure to act in a timely manner on his adjustment of status. The court dismissed the case for lack of jurisdiction. Its holding, however, was predicated on 8 U.S.C.1252(a)(2)(B), which specifically bars judicial review of a §1255 application denial. The present case does not seek review of the Government's denial of the adjustment of status. It seeks just the opposite; an order requiring the Government to process the plaintiff's application. Surely, the Government cannot insulate itself from liability by taking no action.
   Wan Shih Hsieh v. Kiley, 569 F.2d 1179, involved a legal permanent resident seeking to compel an overseas consulate, who was employed by the DOS, to issue visas for her children. The court held it did not have mandamus jurisdiction over INS because INS had no duty to conduct an investigation as to whether a visa should be issued to aliens overseas by the State Department.

The only case the Government cites that remotely supports its argument is <u>Saleh v. Ridge</u>, which involved a Plaintiff seeking to compel USCIS to adjudicate his I-485 Application. The relevant application had been pending before the agency for several years. The <u>Saleh</u> court refused to exercise mandamus jurisdiction because it found that the government had no clear, non-discretionary duty to adjudicate adjustment applications. In support of its holding, the court cited to only one case; <u>Vladagina v. Ashcroft</u>, No. 00 Civ. 9456 (DAB), 2002 WL 1162426 at 4 (S.D.N.Y. April 8, 2002).

The <u>Vladagina</u> case, however, arose from a denial of an adjustment application and the plaintiff sought mandamus to compel the government to act favorably on the application. Under these circumstances, the court held that mandamus was inappropriate because the government had denied the application. The underlying rationale of the decision is that §1255 grants the government discretion in the ultimate decision as to who is granted an adjustment of status and 8 USC §1252(a)(2)(B) specifically bars judicial review of USCIS' decision to deny an adjustment application..

<u>Saleh</u>, however, involved the government failing to adjudicate an application; therefore, <u>Vladagnina</u> is incorrectly cited as a basis of the decision. Accordingly, the logic in the <u>Saleh</u> is fatally flawed and ignores long-standing case law that finds that the government has a non-discretionary duty to adjudicate adjustment applications under §1255. Based on the foregoing, it should not be relied on as the basis for this Court's decision.

### B. *Jurisdiction is Proper Under the APA*

Subject matter jurisdiction in this matter is also proper pursuant to the federal question statute, 8 U.S.C. §1331, and the APA. 5 U.S.C. §551 *et seq.* Despite the

- 9 -

argument of Defendants to the contrary, the cases cited in their Motion effectively compel this conclusion.

The APA provides that "[a] person suffering a legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. §702. Among the agency actions subject to review is "agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. §706(1). While the APA does not independently grant subject matter jurisdiction, the general federal question statute provides that a federal district court shall have jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. §1331. The interaction of these statues grants a court jurisdiction to review any agency action that is "unlawfully withheld or unreasonably delayed". Bartolini v. Ashcroft, 226 F.Supp.2d 350, 353-54 (D. Conn. 2002).

The courts that have considered this issue have uniformly held that the federal question statute and the APA can grant a district court subject matter jurisdiction to compel an agency action that is unreasonably delayed. See Alkenani v. Barrows, 336 F.Supp.2d 652 (N.D. Texas 2005); Yu, 36 F.Supp.2d at 922. These courts have held that jurisdiction is proper in those situations where the plaintiff's claim is not "patently without merit". Bartolini 226 F.Supp.2d at 354 (D. Conn. 2002). "The test for determining whether a claim is 'patently without merit' is 'whether the right claimed is so insubstantial, implausible, foreclosed by prior decisions of [the Supreme] Court, or otherwise completely devoid of merit as not to involve a federal controversy.'" Id. (*quoting* New York Dist. Attorney Investigators Police Benevolent Ass'n, Inc. v.

- 10 -

Richards, 711 F.2d 8, 10 (2nd Cir. 1983)). The instant case does not present such a situation.

In their Memorandum in Support of the Motion to Dismiss, the Defendants argue that Plaintiffs' claim is patently without merit because "any delay in processing of plaintiff's I-485 application is not the result of any inaction or unreasonableness on the part of defendants." See Defendants' Memo at 7. "In this case, the immigrant visa that was obtained by Plaintiff was based upon a labor certification issued by the Department of Labor, the bases of which has been called into question, and which USCIS is now investigating." Id. "Only when that investigation is resolved . . . would the Court have jurisdiction under the APA to determine whether Defendants have unlawfully withheld or unreasonably delayed the adjudication of Plaintiff Barroso I-485 application." Id. The Defendants' argument is not supported by the facts of this case, and is contrary to the case law that has developed in regard to the APA.

In the view of the Defendants, it appears that *any* delay would be acceptable, as long as it was cloaked under the auspices of an "investigation". However, the Defendants have failed to provide any explanation as to how the "bases" of the plaintiff's immigrant visa have been "called into question", other than to repeatedly make this vague assertion. Rather than further illuminating the circumstances surrounding this "investigation", District Director Riordan's declaration makes the equally opaque assertion that "an issue has arisen" as to the plaintiff's work experience. While Director Riordan asserts that USCIS is attempting to "investigate" this question "through diplomatic channels", there is absolutely no explanation as to what has prompted USCIS to take this action.

Clearly, if the Defendants take the position that their delay in adjudicating this application is reasonable under the circumstances, they must provide some explanation as to *what these circumstances are*. They cannot merely assert that they are "investigating" a case without any detail as to what has prompted the investigation. To hold otherwise would essentially eliminate any judicial review of delayed agency action – the government could assert that *any* case has been "called into question" and requires "investigation" before a decision can be rendered. The government would, effectively, have an "all-purpose" excuse to avoid review of *any* delay in adjudicating applications. This is clearly not what Congress intended when it enacted the APA to protect parties against capricious agency action (or inaction). "[C]ourts have uniformly concluded that 'when an agency's recalcitrance, inertia, laggard pace or inefficiency sorely disadvantages the class of beneficiaries Congress intended to protect, judicial review . . . is in order.'" Yu, 36 F.Supp.2d. at 929 (*quoting* In re Amer. Feder. Of Gov. Employees, AFL-CIO, 790 F.2d 116, 177) (D.C. Cir. 1986)).

USCIS laggard pace, inertia, and inefficiency is prevalent in the handling of the Applications. The immigrant visa petition at issue in this proceeding was approved by USCIS on April 24, 2002- over 3 years ago. Director Riordan's declaration reveals (tellingly) that USCIS *did not even begin* to undertake this investigation until March 9, 2005 – when the Plaintiffs' action was imminent.[6] Moreover, USCIS makes the bald assertion that an issue arose - - it provides no details of the particular finding that gave rise to the issue and when this issue arose. How reasonable is the Defendants' explanation that this application has been delayed by the need for an investigation, when

---

[6] See attached letter, dated February 28, 2005 to Henry Hanley, District Counsel for USCIS Boston whereby Plaintiffs' counsel inform USCIS that it would commence litigation on March 25, 2005 if there was no action on the Applications.

it provides no particularized information regarding when the issue arose and the "investigation" in question was not even started until it was clear that litigation was in process? Despite the contention of the Defendants, the only conclusion that can be drawn is that this application has been delayed by the inaction and unreasonableness of the Defendants.

Moreover, the cases cited by the Defendants in support of their Motion fail to serve this purpose. The defendants rely on Danilov v. Aguirre, 370 F.Supp.2d 441 (E.D. Va. 2005), in support of their contention that the Court lacks subject matter jurisdiction in this proceeding. However, Danilov is clearly distinguishable from the case at hand. Danilov involved an application for naturalization that was unadjudicated for a lengthy period of time because of a delay in completing a required Federal Bureau of Investigation "background check". Id. at 442. This "background check" *must* be completed, pursuant to statute, before any naturalization application can be approved. See Public Law 105-119, Title I, Nov. 26, 1997, 111 Stat. 2448.[7] The Danilov court held that jurisdiction was not proper in that proceeding because the delay in adjudicating the naturalization application was solely a result of the delay in the FBI's completion of the statutorily required background check. "[A]ny delay in the processing of plaintiff's naturalization application was not the result of any inaction or unreasonableness on the part of governing agency; instead, it was the result of the legal requirement that CIS [now

---

[7] The statute in question provides that:

> During fiscal year 1998 and each fiscal year thereafter, none of the funds appropriated or otherwise made available to the Immigration and Naturalization Service shall be used to complete adjudication of an application for naturalization unless the Immigration and Naturalization Service has received confirmation from the Federal Bureau of Investigation that a full criminal background check has been completed, except those exempted by regulation as off January 1, 1997. Public Law 105-119, Title I, Nov. 26, 1997, 111 Stat. 2448

USCIS] await receipt of the FBI's completed criminal background investigation before acting on plaintiff's application." Danilov, 370 F.Supp.2d at 444.

The Defendants' reliance on Danilov is misplaced. Danilov clearly was decided based on a very specific factual situation – USCIS was unable to decide the naturalization application because they had not received the results of an FBI criminal background investigation that was mandated by Congress before adjudication. There is no such factor in the instant case – all of the required FBI criminal background checks in regard to plaintiff's application have apparently been completed, and the defendants are not bound by any Congressional mandate that they perform any further investigation in regard to the application. Furthermore, USCIS in Danilov was not conducting their own investigation into the application – they were awaiting routine criminal background checks from the FBI. The Defendants in the instant case have complete control over all activity in adjudication of this application – any delay is solely their responsibility.

In conclusion, this court is clearly vested with subject matter jurisdiction pursuant to the APA, 5 U.S.C. §551 *et seq.*, and the general federal question statute, 8 U.S.C. §1331. To suggest otherwise would be to effectively permit the government to escape any review of unreasonably delayed agency actions. The Defendants' arguments in this regard simply do not withstand the weight of scrutiny.

## III. The Defendants are Not Entitled to Summary Judgment

In its last attempt to dismiss the case, the Defendants move for Summary Judgment. In a motion for summary judgment, the burden is upon the moving party to show that based upon the pleadings, discovery and affidavits "that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of

law.  Fed. R.Civ. P. 56(c).  The court must view the entire record in light most hospitable to the non-moving party and indulge all reasonable inferences in the party's favor.  O'Conner v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993).

The only submission the government makes in support of its argument is a self-serving "declaration" by one of the Defendants, Denis Riordan, USCIS, Boston District Director.  In his statement Director Riordan vaguely declares that that sometime subsequent to the April 2002 visa petition approval, "an issue has arisen as to whether subject had the necessary work experience".  He further states that on March 9, 2005[8], USCIS took steps to investigate the claim.  His statement, however, failed to articulate the date on which the issue arose, thereby making it impossible, at this time, to determine whether USCIS' delays in the present case are reasonable.  Given the fact that all reasonable inferences must be made in favor of the non-moving party, it is reasonable to infer that the issue arose in 2002.  If this is the case USCIS would be hard-pressed to say a three-year delay in taking any affirmative steps to verify the prior work experience is reasonable.[9]  Moreover, USCIS laggard pace of the investigation continues – despite being granted an extension to file an answer in the present case it appears it has done nothing further in the investigation since March 2005 - - over six months ago.

Dir. Riordan provides no explanation as to what and when the "issue" arose.  To the extent that the Defendants argue that the delay is reasonable under the circumstances,

---

[8] It is disturbing that the investigation only appears to have been commenced when the Plaintiff informed him that it would seek mandamus relief in the matter.  See copy of the January 31, 2005 letter attached hereto.

[9] To the extent that the Government relied on Bartolini v. Ashcroft, 226 F.Supp.2d 350 (D.Conn.2002), the reliance is mistaken.  The decision in Bartolini was very fact specific.  It involved an applicant, whose own actions created an extremely complicated issue regarding the adjudication of this adjustment application.  It also appeared that once INS became aware of possible fraud it conducted an investigation within a reasonable time.  Under these circumstances, the court in Bartolini granted summary judgment in favor of the government.

the Plaintiffs are entitled, through the discovery process, to ascertain exactly what the issue was and when it arose.

Because it is possible that the Plaintiffs can demonstrate that the delay has in fact been unreasonable, Summary Judgment is inappropriate.[10]

## CONCLUSION

Based on the foregoing, the Defendants' Motion to Dismiss or in the alternative for Summary Judgment must be denied.

## **REQUEST FOR ORAL ARGUMENT**

>Respectfully submitted,
>The Plaintiffs
>Jose Barroso
>Anna Angelica M. Costa
>Raissa M. Costa
>By their Attorneys
>
>/s/Susan E. Zak
>
>_____
>
>Susan E. Zak
>BBO 568044
>LAW OFFICE OF JOHN K. DVORAK
>P.O. Box 8788
>Boston, MA 02114

---

[10] At best, the present case is not ripe for summary judgment. The Plaintiff is entitled to seek information through the discovery requests, including, but not limited to, the deposition of Mr. Riordan, to ascertain the timing of the above-referenced events and the particularized findings made in Mr. Barrosa's case that led to the inquiry..

## CERTIFICATE OF SERVICE

      I, Susan E. Zak , Attorney for the Plaintiffs hereby certify that on September 23, 2005 I served a copy of the Plaintiffs' Opposition to Defendant's Motion to Dismiss, or, in the Alternative Summary Judgment via first-class mail to:

Michael Sady, Esq.
U.S. Attorney General Office
United States Federal Court
1 Courthouse Way
Suite 9200
Boston, MA 02210

                                    /s/ Susan E. Zak 9/23/05
                                    _____
                                    Susan E. Zak, Esq.
                                    LAW OFFICE OF JOHN K. DVORAK,.
                                    P.O. Box 8788
                                    180 Canal Street, 4th Floor
                                    Boston, MA 02114

# LAW OFFICES OF JOHN K. DVORAK, P.C.

_____

**ATTORNEY-AT-LAW**

_____

180 Canal Street, 4th Floor, P.O. Box 8788  ●  BOSTON, MA 02114  ●  (617) 723-4422  ●  FAX (617) 723-8305

**John K. Dvorak**
**Christopher W. Drinan**
**Susan E. Zak**

February 28, 2005

VIA HAND-DELIVERY

Henry J. Hanley, District Counsel
U.S. Citizenship and Immigration Services
JFK Federal Building, Room 425
Boston, MA

RE:   Draft Complaint for Mandamus
      Jose M. BARROSO A#95-471-008
      Ana Angelica M. COSTA  A#95-473-471
      Raissa M. COSTA A#95-471-006

Dear Attorney Hanley:

Please find enclosed a copy of a draft complaint that we intend to file with the United States District Court on **Friday, March 25, 2005** unless the above-referenced aliens I-485 Applications are adjudicated.

The above-referenced family's I-485 Application have been pending sicne June 2002.  Officer Tiberi interviewed them on October 21, 2004.  At the conclusion of interview, Officer Tiberi stated that the case would be continued becuase there was another alien listed on a computer check that had the same parent's as Jose M. Barroso (the lead in the case).  She stated that she would not decide the case until the matter was resolved.

To date, we have received no decision on this matter.  We have sent requests to USCIS to adjudicate the case (see Exhibit E of the Complaint) but have received no response.  Accordingly, we are left with no alternative to file the enclosed Complaint, which seeks

attorney's fees and costs pursuant to the Equal Justice Act, if we do not hear from you by **Friday, March 25, 2005**.

If you have any questions regarding this matter, please do not hesitate to contact me at (617) 723-7766 or szak@johnkdvorak.com.

                                  Very truly yours,


                                  Susan E. Zak


5hanley-mandamus2